**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**BIANCA R. PAPAPIETRO,**

     **Plaintiff,**

  **vs.**                           **Civil Action File No.**

**SMURTI CORPORATION, MANOJ**   **Jury Trial Demanded**
**G. BAROT and RAHUL PATEL,**

     **Defendants.**

## COMPLAINT

Plaintiff Bianca Papapietro ("Papapietro") brings this Complaint against Defendants Smurti Corporation, ("Smurti") Manoj G. Barot ("Barot") and Rahul Patel ("Patel") and shows the Court as follows:

### INTRODUCTION

1.

Papapietro brings this action under the Fair Labor Standards Act of 1938  to recover (1) due but unpaid overtime compensation and an additional like amount as liquidated damages, (2) compensatory damages wages resulting from Defendants' unlawful retaliatory adverse employment actions and an additional like amount as liquidated damages and (3) to be reimbursed her costs of litigation, including her reasonable attorney's fees.

**JURISDICTION AND VENUE**

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA § 16(b), 29 U.S.C. § 216(b) and 28 U. S.C. § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Smurti is located in this judicial district, Patel and Barot reside in this judicial district, and a substantial portion of the events giving rise to the claims herein occurred in this judicial district.

**THE PARTIES**

4.

Papapietro resides in Norcross, Gwinnett County, Georgia.

5.

Smurti is a corporation organized under the laws of the State of Georgia.

6.

Smurti can be served with process via its registered agent, Manoj G. Barot at 4720 Cambridge Trace, Dunwoody, Georgia 30338.

7.

Barot is a resident of DeKalb County, Georgia.

8.

Barot can be served with process at his residence, located at 4720 Cambridge Trace, Dunwoody, Georgia 30338.

9.

Patel is a resident of Gwinnett County, Georgia.

10.

Patel can be served with process at his residence, located at 1330 Nash Lee Drive, S.W., Lilburn, Georgia.

## FACTUAL ALLEGATIONS

11.

At all times material hereto, Defendants have owned and operated Smurti, a food service management company located in Dunwoody, Georgia.

12.

At all times material hereto, Barot has been the CEO, CFO, Secretary and registered agent for Smurti.

13.

At all times material hereto, Patel has been a District Manager for Smurti.

14.

On November 13, 2014, Defendants hired Papapietro as an administration and marketing assistant.

15.

From November 13, 2014 through February 2, 2015, Defendants employed Papapietro as an administration and marketing assistant.

16.

At all times material hereto, Smurti has been an "employer" of Papapietro as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

17.

At all times material hereto, Barot has exercised operational control over the work activities of Papapietro.

18.

At all times material hereto, Patel has exercised operational control over the work activities of Papapietro.

19.

At all times material hereto, Smurti designated Barot as Papapietro's supervisor.

20.

At all times material hereto, Barot was Papapietro's supervisor.

21.

At all times material hereto, Patel was Papapietro's supervisor.

22.

At all times material, Barot was an "employer" of Papapietro as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

23.

At all times material, Patel was an "employer" of Papapietro as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

24.

At all times material hereto, Smurti was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

25.

During 2014, Smurti had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

26.

During 2015, Smurti had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

27.

At all times material hereto, two or more employees of Smurti, including Papapietro, used or handled items that that had moved in interstate commerce and were necessary for Smurti to perform its commercial purpose, including computers, cell phones, office supplies and food items.

28.

During 2014, Smurti had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

29.

During 2015, Smurti had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

30.

During 2014, Smurti had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

31.

During 2015, Smurti had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

32.

At all times material hereto, Smurti was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

33.

Smurti is subject to the personal jurisdiction of this Court.

34.

At all times material hereto, Papapietro has been an "employee" of Smurti as defined in FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

35.

At all times material hereto, Papapietro has been an "employee" of Barot as defined in FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

36.

At all times material hereto, Papapietro has been an "employee" of Patel as defined in FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

37.

At all times material hereto, Defendants did not vest Papapietro with the authority to formulate, interpret or implement management policies or operating practices.

38.

At all times material hereto, Papapietro did not carry out major business assignments in conducting the operations of the business.

39.

At all times material hereto, Papapietro did not perform work that affected Smurti's business operations to a substantial degree.

40.

At all times material hereto, Smurti did not vest Papapietro with the authority to commit it matters that have significant financial impact.

41.

At all times material hereto, Smurti did not vest Papapietro with the authority to waive or deviate from established policies and procedures without prior approval.

42.

At all times material hereto, Smurti did not vest Papapietro with the authority to negotiate and bind Smurti on significant matters.

43.

At all times material hereto, Papapietro was not involved in planning Smurti's long- or short-term business objectives.

44.

At all times material hereto, Papapietro was not exempt from the maximum hour requirements of the FLSA by reason of any exemption.

45.

At all times material hereto, Defendants did not employ Papapietro in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

46.

At all times material hereto, Defendants did not employ Papapietro in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

47.

At all times material hereto, Defendants did not employ Papapietro in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

48.

At all times material hereto, Papapietro was not employed in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

49.

At all times material hereto, Defendants utilized seven day workweeks for Papapietro that began each Monday and extended to and including the following Sunday.

50.

At all times material hereto, Defendants utilized pay periods for Papapietro that each encompassed two such workweeks.

51.

At all times material hereto, Smurti paid Papapietro by direct deposit into her bank account and provided her with pay stubs detailing the number of hours worked in the pay period, the gross pay for the pay period and the amounts deducted for payroll taxes.

52.

During the workweek ending November 23, 2014 ("Week 47"), Papapietro worked for Defendants a total of 40.5 hours.

53.

Defendants were aware that Papapietro worked more than forty hours during Week 47.

54.

On or about December 4, 2014, Smurti issued a pay stub to Papapietro for the pay period that encompassed Week 47.

55.

Smurti's pay stub for Papapietro and the corresponding direct deposit it made on her behalf purportedly compensating her for all work performed in Week 47 failed to compensate Papapietro for her work during such workweek in excess of forty hours at one and one half time her regular rate.

56.

During the workweek ending December 14, 2014 ("Week 50"), Papapietro worked for Defendants a total of 51.2 hours.

57.

Defendants were aware that Papapietro worked more than forty hours during Week 50.

58.

On or about December 18, 2014, Smurti issued a paycheck to Papapietro for the pay period that encompassed Week 50.

59.

Smurti's pay stub for Papapietro and the corresponding direct deposit it made on her behalf purportedly compensating her for all work performed in Week 50 failed to compensate Papapietro for her work during such workweek in excess of forty hours at one and one half time her regular rate.

60.

Defendants truncated Papapietro's work hours to reflect 80.00 hours in the pay stub and corresponding direct deposit on her behalf purportedly compensating her for all work performed in Week 49 and Week 50.

61.

On or about December 15, 2014, Papapietro asked Barot for payment for her overtime work.

62.

During the workweek ending December 21, 2014 ("Week 51"), Papapietro

worked for Defendants a total of 41.5 hours.

63.

Defendants were aware that Papapietro worked more than forty hours during

Week 51.

64.

On or about December 31, 2014, Smurti issued a pay stub and a corresponding

direct deposit to Papapietro for the pay period that encompassed Week 51.

65.

Smurti's pay stub for Papapietro and the corresponding direct deposit it made

on her behalf purportedly compensating her for all work performed in Week 51

failed to compensate Papapietro for her work during such workweek in excess of

forty hours at one and one half time her regular rate.

66.

During the workweek ending January 18, 2015 ("Week 3"), Papapietro worked

for Defendants a total of 48.5 hours.

67.

Defendants were aware that Papapietro worked more than forty hours during Week 3.

68.

At all times material hereto, Smurti designated Olga Stiewing to manage its human resources and payroll matters.

69.

On or about January 26 or 27, 2015, Stiewing told Papapietro that she had worked 7.9 hours of overtime during the workweeks encompassed by the regular paycheck that was due to be issued on January 29, 2015.

70.

On or about January 29, 2015, Smurti issued a pay stub and made a corresponding direct deposit to Papapietro for the pay period that encompassed Week 3.

71.

Smurti's pay stub for Papapietro and the corresponding direct deposit it made on her behalf purportedly compensating her for all work performed in Week 3 failed to compensate Papapietro for her work during such workweek in excess of forty hours at one and one half time her regular rate.

72.

On or about January 28, 2015, Stiewing advised Papapietro that her pay stub had not included payment for overtime at one and one half times her regular rate.

73.

Stiewing stated that Barot did not like to pay overtime and that Papapietro should send her an email requesting to be paid overtime that she would forward to Barot.

74.

Papapietro then sent an email to Stiewing, requesting to be paid overtime for her work in excess of forty hours during Week 3.

75.

Stiewing forwarded that email to Barot.

76.

Later that day, Stiewing advised Papapietro that Barot had not responded to her.

77.

Papapietro then sent an email directly to Barot, requesting payment for overtime.

78.

Barot replied directly to Papapietro by an email in which he asked who had authorized the overtime.

79.

Papapietro replied that Patel had instructed her to work late, thus causing the overtime.

80.

On January 29, 2015, Barot sent Papapietro further emails stating that overtime must be pre-approved.

81.

On or about January 29, 2015, after sending the email, Barot called Papapietro to his office for a meeting.

82.

Prior to January 29, 2015, Barot never told Papapietro that any aspect of her work performance was unsatisfactory.

83.

During this meeting, Barot told Papapietro that she was creating a negative office environment and failing to follow her job description.

84.

Papapietro replied that she had never been supplied a job description.

85.

During this meeting, Barot instructed Papapietro to put aside what she was doing and to devote her time to creating a job description for her position.

86.

Papapietro complied with this request.

87.

On or about January 30, 2015, Papapietro advised Patel that she planned to leave early in order to avoid working more than forty hours that week.

88.

Patel told her to come see him before she left.

89.

On or about January 30, 2015, at approximately 12:30 p.m., Papapietro met with Patel.

90.

During this meeting, Patel told Papapietro that he intended to pay her overtime.

91.

During this meeting, Patel told Papapietro that there had been some confusion about her job description.

92.

During this meeting, Patel suspended Papapietro indefinitely without pay.

93.

During this meeting, Patel confiscated the computer tablet and office keys that Smurti had assigned to Papapietro.

94.

Patel told Papapietro that henceforth she would only be permitted to work 10-15 hours per week and would perform all such work from home.

95.

On February 2, 2015, Patel told  Papapietro that she needed to create a job description by February 4, 2015.

96.

On February 4, 2015, Patel called Papapietro into a meeting.

97.

During that meeting, Patel told Papapietro that she would not be allowed to work unless she wrote an apology to Smurti.

98.

During the workweek ending February 1, 2015 ("Week 5"), Papapietro worked for Defendants a total of 41.83 hours.

99.

Defendants were aware that Papapietro worked more than forty hours during Week 5.

100.

On or about February 12, 2015, Smurti issued a paycheck to Papapietro for the pay period that encompassed Week 5.

101.

Defendants truncated Papapietro's hours to reflect 40.00 hours in the regular paycheck to for the pay period encompassing Week 5.

102.

Smurti's pay stub for Papapietro and the corresponding direct deposit it made on her behalf purportedly compensating her for all work performed in Week 5 failed to compensate Papapietro for her work in excess of forty hours at one and one half time her regular rate.

103.

Defendants have not permitted Papapietro to work since February 4, 2015.

104.

Defendants have not compensated Papapietro for work performed on February 2, 3 or 4, 2015.

105.

Defendants terminated Papapietro, effective February 4, 2015.

## COUNT I – FAILURE TO PAY OVERTIME

106.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

107.

At all times material hereto, Papapietro has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

108.

During her employment with Defendants, Papapietro regularly worked in excess of forty (40) hours per week.

109.

Defendants failed to pay Papapietro for overtime in her regular paychecks, in violation of 29 C.F.R. § 778.106.

110.

Defendants failed to pay Papapietro at one and one half times her regular rate for work in excess of forty (40) hours during all workweek from November 3, 2014 through January 30, 2015.

111.

Defendant willfully failed to pay Papapietro at one and one half times her regular rate for work in excess of forty (40) hours during all workweek from November 3, 2014 through January 30, 2015.

112.

Papapietro is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

113.

As a result of the underpayment of overtime compensation as alleged above, Papapietro is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

## COUNT II - RETALIATION

### 114.

The allegations contained in all paragraphs above are incorporated by reference as if fully set out herein.

### 115.

On at least two occasions in December 2014 and late-January 2015, Papapietro requested that Defendants compensate her for due but unpaid overtime compensation.

### 116.

Papapietro's requests to be paid for due but unpaid overtime compensation was an unequivocal assertion of rights protected by the FLSA.

### 117.

Papapietro's request to be paid overtime is a protected activity within the meaning of the FLSA, § 215(a)(3).

### 118.

Barot told Papapietro that she was creating a negative office environment in retaliation for her protected conduct.

119.

Barot instructed Papapietro to create a new job description in retaliation for her protected conduct.

120.

Patel confiscated the computer tablet and office keys Smurti had previously provided Papapietro in retaliation for her protected conduct.

121.

Patel instructed Papapietro to apologize in retaliation for her protected conduct.

122.

Patel indefinitely suspended Papapietro in retaliation for her protected conduct.

123.

Defendants terminated Papapietro in retaliation for her protected conduct.

124.

Defendants took these actions in retaliation for Ms. Papapietro's protected conduct and not for any legitimate business reason.

125.

Defendants' purported rationale for the adverse employment actions it visited on Papapietro is pretextual.

126.

A reasonable worker would be dissuaded from asserting her rights under the FLSA by Defendants' above-described actions.

127.

As a direct and foreseeable result of Defendants' unlawful retaliation, Papapietro has suffered loss of the income and benefits of her employment, emotional distress and other damages.

128.

As a result of the damages caused by Defendants' unlawful retaliatory conduct, Papapietro is entitled to recovery of compensatory damages from Defendants, jointly and severally, in amount to be proven at trial.

129.

As a result of the willfulness of Defendants' unlawful retaliatory conduct, Papapietro is entitled to recovery of liquidated damages from Defendants, jointly and severally.

130.

As a result of Defendants' unlawful retaliatory conduct, Papapietro is entitled to recovery of her costs of litigation, including her reasonable attorneys' fees.

**WHEREFORE,** Plaintiff respectfully prays:

1. That Plaintiff's claims be tried before a jury;

2. That Plaintiff be awarded an amount to be determined at trial against Defendants, jointly and severally, in unpaid overtime compensation due under the FLSA, plus an additional like amount in liquidated damages due, plus prejudgment interest thereon;

3. That Plaintiff be awarded an amount to be determined at trial against Defendants, jointly and severally, in compensatory damages caused by their unlawful retaliatory conduct plus an additional like amount in liquidated damages due, plus prejudgment interest thereon;

4. That Plaintiff be reinstated to her position or be awarded front pay in lieu of reinstatement;

5. That Plaintiff be awarded her costs of litigation, including her reasonable attorneys' fees and costs from Defendants, jointly and severally; and

6. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

**DELONG CALDWELL BRIDGERS
& FITZPATRICK, LLC**

*/s/ Kevin D. Fitzpatrick, Jr.*
Kevin D. Fitzpatrick, Jr.
Georgia Bar No. 262375

3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
Telephone: (404) 979-3171
Facsimile: (404) 835-6168
kevin.fitzpatrick@dcbflegal.com
charlesbridgers@dcbflegal.com
matthew.herrington@dcbflegal.com

*/s/ Charles R. Bridgers*
Charles R. Bridgers
Georgia Bar No. 080791

*/s/ Matthew W. Herrington*
Matthew W. Herrington
Georgia Bar No. 275411

**COUNSEL FOR PLAINTIFF**

26